[Civ. No. 60.   Fifth Dist.   Feb. 20, 1962.]

SEYMOUR GAVCE et al., Plaintiffs and Respondents, v. NICK PENETTI, Defendant and Appellant.

C. Ray Robinson and Charles E. Goff for Defendant and Appellant.

Griswold & Barrett and George C. Barrett for Plaintiffs and Respondents.

BROWN, J.—This is an appeal from a judgment in favor of the plaintiffs in the sum of $518.80.

Plaintiffs operate a furniture store in Merced, handling heating and cooling equipment. On May 2, 1959, the defendant ordered a heat pump from plaintiffs, a heat pump being an electrical unit which is used for heating and cooling a

building, operating entirely upon electricity. Plaintiffs received from their distributor, the Fresno Distributing Company, a crate labeled "Heat Pump," which was taken from Merced to defendant's home in Sonora on order by the defendant. This crate was mislabeled, indicating that it was a heat pump when, in fact, it was an air-conditioning unit.

Defendant paid $302 to Builders' Sheet Metal Company for installing this unit in his house, which installation also included certain duct work. During the installation the defendant had trouble properly hooking the unit up and asked the plaintiffs for additional wiring instructions. When the unit was completely installed it was discovered for the first time that this was not a heat pump, but was an ordinary air-conditioning unit.

The defendant had paid the plaintiffs the sum of $618.80 for said unit and upon being unable to get the equipment to work properly and having discovered that the unit was not a heat pump, the defendant complained to the plaintiffs of this mistake. After much discussion, the plaintiffs refunded to defendant the sum of $618.80, on September 29, 1959.

Plaintiffs advised the defendant that Fresno Distributing Company would pick up the air conditioner, but this was not done.

The defendant having removed the air conditioner, installed a heat pump, which installation cost him $165. He was able to use the duct work which was put in for the original installation.

The original air conditioner remained in the garage of the defendant in Sonora, and the defendant finally sold the unit to a Mr. Olin Starnes for the sum of $300 in the fall or early winter of 1959, although there is some conflict in the record that the unit was sold to a Mr. Gill.

Due to the modifications which defendant had placed on the unit because of the fact that those installing the unit did not know that it was not a heat pump, it cost approximately $100 to put the air conditioner back in its original condition.

In the trial of the action the purchaser, Mr. Starnes, who was a former distributor for five years handling the same kind of equipment for the same company, testified that he could buy one of these identical units (air conditioner) at Slakey Bros. in Modesto at any time for $300.

The court found in its findings of fact that the plaintiffs sold on May 5, 1959, and delivered to defendant an air-conditioning unit under the "mutual mistake" that the same was a

heat pump; that the plaintiffs had returned to the defendant the sum of $618.80 on September 29, 1959, being the purchase price thereof; and that the plaintiffs demanded the return of said unit which was refused by the defendant; and that the defendant converted the same to his own use; that the reasonable value of said air-conditioning unit was $618.80 on the date of such conversion; and as a counterclaim which the defendant pleaded, the court allowed him the sum of $100.

The court during the trial said, ". . . if Penetti is liable here, he is liable for the value of the unit as it was delivered to him, not when it was delivered to this man."

Thereafter, the defendant appealed from this judgment and also requested leave of this court to file a cross-complaint if the matter is reversed, but this court does not have jurisdiction nor the right to grant the defendant leave to file a cross-complaint or to order the court below to receive the same.

The questions involved in this matter are: What is the proper measure of damages for conversion of said unit?; and further, Is defendant entitled to damages on his counterclaim for the cost of removing the misrepresented item and the cost of installing an item which he thought he had bought originally?

It is true that the plaintiffs did ship to the defendant a crate which was mislabeled "Heat Pump" instead of "Air Conditioner," which it contained. This was plaintiffs' mistake, and the defendant likewise made a mistake in that he assumed that this was a heat pump when, in fact, it was an air-conditioning unit, and endeavored to have it installed by the Builders' Sheet Metal Company. There was no testimony at the trial as to the cost of an air conditioner such as the defendant received, or its reasonable value, except Mr. Starnes' testimony as to what he could buy one for.

The plaintiffs testified that the value of an air-conditioning unit ". . . would run around about $550. I mean that is the retail price of it, because I worked on a deal for him as a heat pump on a small mark up."

At the time the plaintiffs gave the defendant back his $618.80, plaintiff Gavce testified, ". . . I think I told him that Fresno Distributing would pick it up with their truck."

Section 1789 of the Civil Code outlines the remedies for breach of warranty, stating that when the buyer has claimed any one of the four remedies allowed, he is not allowed any other remedy, and states further:

"(1) . . . the buyer may, at his election:

". . . . . . . . . . . .

"(d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid

". . . . . . . . . . . .

"(5) [Refusal of return of goods.] Where the buyer is entitled to rescind the sale and elects to do so, if the seller refuses to accept an offer of the buyer to return the goods, the buyer shall thereafter be deemed to hold the goods as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price which has been paid, and with the remedies for the enforcement of such lien allowed to an unpaid seller by section 1773."

In the present case the defendant offered to return the faulty, mislabeled equipment; received the refund of $618.80; and while there is some dispute as to what was actually done, the plaintiffs did not send for the equipment. The defendant shipped the equipment to Merced, but it was not delivered, and the unit was taken back to the defendant in Sonora.

Subdivision (3) of section 1789 of the Civil Code provides: "Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer. But if deterioration or injury of the goods is due to the breach of warranty, such deterioration or injury shall not prevent the buyer from returning or offering to return the goods to the seller and rescinding the sale."

Actually, in this case the defendant buyer did not rescind the sale until after he had discovered that the unit was not a heat pump, but was an air conditioner. The misdelivery of the unit was the complete fault of the plaintiffs. Therefore, as soon as the defendant discovered this mistake he contacted the plaintiffs; offered to return the equipment; and received his money back.

Section 1770 of the Civil Code provides: "Buyer is not bound to return goods wrongly delivered. Unless otherwise agreed, where goods are delivered to the buyer, and he refuses

to accept them, having the right so to do, he is not bound to return them to the seller, but it is sufficient if he notifies the seller that he refuses to accept them."

Therefore, as far as defendant is concerned, all the requirements covered under section 1789 and section 1770 of the Civil Code were complied with. The defendant was in the position of having a piece of equipment on his hands which he had not ordered and which he had offered to return; and after the equipment had remained in his garage for a time he sold it to a third party for $300, at which time the conversion took place. We believe the conversion took place at the time the defendant sold the air-conditioning unit for $300. He could have kept it in his garage indefinitely. The evidence does not support the value of the air-conditioning equipment to be $618.80, nor that the conversion took place when defendant received back his $618.80 or when the unit was delivered to him.

Section 3336 of the Civil Code states: "The detriment caused by the wrongful conversion of personal property is presumed to be:

"First—The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and

"Second—A fair compensation for the time and money properly expended in pursuit of the property."

There is no evidence that plaintiffs pursued the property.

This action differs from the usual conversion case in that the conversion was induced by the wrongful act of the plaintiffs. In the first place, they furnished defendant the wrong equipment, which was a breach of the contract. When this breach was made known to plaintiffs they did not take back the equipment. Because of plaintiffs' breach of contract and their refusal to retake the equipment, defendant sold it, thereby technically committing conversion. Equity requires that defendant recover the damages caused by the plaintiffs' breach of contract, which are sought by way of counterclaim in the conversion action.

In view of the foregoing, the judgment is reversed with directions to the lower court for a retrial only on the issue of what the value of the air-conditioning unit was at the time it was converted and for judgment to be entered for the

plaintiffs in that amount, less the cost of installing and removing the mislabeled unit as presented by defendant's counterclaim.

Conley, P. J., and Stone, J., concurred.